RICHARD R. FIELD *et al.*, Plaintiffs in Error, v. LANGSDORF & ROSENSTEIN, Defendants in Error.

1. : *Contract — Sale — Levy — Estoppel.* — If, after an alleged purchase of goods, the vendees caused an execution to be levied on them as the property of the vendor, this was a solemn admission on their part that the goods were, at the time of the levy, the property of the vendor; and they are estopped from claiming the goods in any other way than by virtue of said levy, even although the evidence showed they did not intend by such levy to abandon their alleged purchase, and acted under advice from counsel that their title to the property would not be affected thereby.

### Error to St. Louis Circuit Court.

A general statement of the facts in this case will be found in 36 Mo. 441.

*Krum, Decker & Krum*, for plaintiffs in error.

The facts now presented are different from the last transcript. In this record it appears beyond all doubt that there was an absolute sale and transfer of the whole stock of goods. The mere fact that the purchaser directs a levy upon his own goods, after they are in the possession of the constable under an attachment, is undoubtedly evidence, "and a circumstance going strongly" against him, but may be explained. This explanation is conclusively furnished in this record. They are advised by counsel that the sheriff can take them as their agent; that it would be a more convenient way to obtain possession than by an action of replevin; that they would not lose their title by the prior purchase, as the sheriff would be regarded merely as their agent. A trespasser who has seized the goods unlawfully cannot claim an estoppel in his favor by anything which occurs after his trespass has been committed.

The court below, in the last trial, gave as a declaration of law this instruction: that the interpleaders were estopped from claiming the goods in any other way than by reason of said levy, if they did cause an execution to be levied on the goods. This instruction was given notwithstanding the fact that the only title of plaintiffs (if any) accrued by their attachment before the levy of the execution. In other words, the instruction amounts to this:

that, although the interpleaders had a perfect title to the goods before Langsdorf's attachment, yet if after that attachment the interpleaders claimed by another title (*i. e.*, by execution), then such subsequent claim would estop them from asserting their perfect title. No such instruction can stand for a moment, nor does the opinion of the Supreme Court sanction such an interpretation. Such a theory is in direct conflict with every decision made by this court on the law of estoppel. (Taylor v. Zepp, 14 Mo. 482; Newman v. Hook, 37 Mo. 213.) In the last case the rule of estoppels *in pais* is recognized. To constitute an estoppel three elements must combine : 1. An admission inconsistent with the evidence proposed to be given or the claim offered to be set up. 2. An action by the other party upon such admission. 3. An injury to this other party by allowing the admission to be disproved. Further, the doctrine of estoppel prevents parties from proving the truth because they have before that either said or acted falsehoods, and third persons have acquired rights upon the faith of these falsehoods being true ; and their rights cannot be destroyed by disproving these former statements. Now, as the execution was levied after the attachment of Langsdorf, it is utterly impossible that the plaintiffs could have levied their attachment upon the faith of the execution levy, or that they could have based any action on a levy which had not been made. "What former execution," in the language of this court, "did Field Bros. levy on these goods, as the property of Meirand, to mislead the plaintiffs in issuing their attachment?" If Field Bros. had issued any former execution on these goods, then such execution or levy might form the basis of an estoppel in favor of a subsequent attaching creditor. Otherwise, this instruction of estoppel is simply absurd. It is not sufficient that the two claims, one by purchase and the other by levy, are inconsistent ; it would be preposterous to say that, because a man asserts two inconsistent titles, the former of which is a perfect title, he shall lose all title.

It will be observed that the title by purchase is fully established by the evidence, prior to the Langsdorf attachment, which is the second point. The bill of exceptions states positively

" that, on the afternoon of the 7th of January, 1861, Meirand sold his entire stock of goods in his store to interpleaders, and immediately, during the same afternoon, the interpleaders and Meirand proceeded to make up an inventory of the stock," etc., etc. The sale of the goods was perfect, although the extensions had not been made. That was not necessary to carry the title. This matter is too plain for argument. Upon the question of a perfect sale, the evidence in the former case might be deficient; on this transcript it is stated in positive terms. It is only where something remains to be done, which is, by the contract, a condition precedent to the passing of the title, that the title will not pass until the act is performed. (21 Barb. 198 ; 2 N. Y. 258.) The bill of sale was signed; inventory complete; each article and price agreed on and embraced in the inventory. The only thing left to be done was to make the extensions ; but the making of these extensions was not a condition precedent to a perfect sale.

*Knox & Smith*, for defendants in error.

I. Before the levy of the execution in favor of Field Bros., plaintiffs sued out a writ of attachment, and attached the goods in question as the property of Meirand. Upon this state of facts, plaintiffs claim that, as attaching creditors, they were entitled to hold the property in question. (36 Mo. 440 *et seq.*)

BAKER, Judge, delivered the opinion of the court.

This case has been here before, and will be found reported in 36 Mo. 441, where a full statement of it can be seen. It is unnecessary to restate it here. The testimony is substantially as it was then. The only material difference consists in testimony introduced by the respondents tending to show that the plaintiffs did not intend to abandon their alleged purchase of the goods in question by taking out an execution on the judgment in their favor against Meirand and having the same levied on the goods as his property ; that they were advised by their attorney that it would not affect their title to the goods, and would be the most convenient way to get possession of them.

The court below, on its own motion, instructed the jury that "if, after the supposed sale by Meirand to interpleaders, they caused an execution to be levied on the goods as the property of Meirand, this was a solemn admission on their part that the goods were the property of Meirand, and not the property of interpleaders, and estops interpleaders from claiming the goods in any other way than by virtue of said levy."

The conduct of the appellants in causing an execution to issue on a judgment that constituted the consideration for the goods they claim to have purchased, and which was fully satisfied if the purchase was in fact made, and in having it levied on the goods in question as the property of the person from whom they claim to have purchased them, is totally inconsistent with their claim to the property. Nor is this glaring inconsistency relieved by the explanation given. It was a gross abuse of the process of the court to use it in getting possession of the goods in such an illegal and improper manner. The court was fully justified in characterizing the transaction in strong language.

We think the appellants were fairly estopped, and that the instruction complained of was properly given.

The judgment of the court below is affirmed. The other judges concur.